IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICK LEWIS RUDD,        )
                                    )
        Petitioner,             )
                                    )
v.                              )        Civil Action No. 3:10CV481-HEH
                                    )
PATRICIA STANSBERRY,       )
                                    )
        Respondent.           )

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2241 Petition)

Patrick Lewis Rudd filed this petition for a writ of habeas corpus. At the time he filed the present action, Rudd was incarcerated in the Federal Bureau of Prisons ("BOP").[1] Rudd challenges his conviction for the institutional infraction of fighting with another inmate. Rudd asserts that his constitutional rights were violated by Respondent's failure to consider self-defense as an absolute defense to such an infraction. Respondent has moved to dismiss or in the alternative for summary judgment. The matter is ripe for disposition.

---

[1] Subsequent to the filing of the present action, Rudd was released from incarceration to a term of supervised release. Rudd asserts that his release does not render his present challenge moot because it is possible that a favorable decision on his § 2241 Petition might result in a shorter period of supervised release. *See Townes v. Jarvis*, 577 F.3d 543, 549 n.3 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1883 (2010).

## I. Procedural and Factual Background

At the time of the events giving rise to the § 2241 Petition, Rudd was incarcerated at the Federal Prison Camp in Butner, North Carolina ("FPC Butner"). On June 26, 2009, while working at the landscape shop at FPC Butner, Rudd and inmate Phillips "began arguing and shoving." (Mem. Supp. § 2241 Pet. 2.)[2] Correctional Officer Hobgood ordered Rudd and Phillips to stop. (*Id.*) Correctional Officer Hobgood then entered his office to report the incident. (*Id.*) Rudd followed Hobgood into his office.[3] (*Id.*) Hobgood ordered Phillips into his office. (Resp't's Mem. Supp. Mot. Summ. J. Attach 3, Incident Report ¶ 11.) "Phillips entered [the office] and immediately lunged at Rudd and hit him with a closed left fist striking Rudd in the nose. Both inmates began striking one another. At that point, [Hobgood] ordered both inmates to stop [and] then [Hobgood] notified control of the fight in the outside Landscape shop." (*Id.* ¶ 11.)

Rudd was charged with the institutional offense of fighting with another person. (Resp't's Mem. Supp. Mot. Summ. J. Attach 3, Discipline Hearing Officer Report 1.) On July 16, 2009, a disciplinary hearing was conducted on the above offense. During the course of that hearing, "Rudd admitted striking Phillips in order to end his attack and the threat of serious harm, but asserted that he was left with no option other than defending

---

[2] The Court has corrected the capitalization and spacing in the quotations to Rudd's submissions.

[3] According to another inmate who witnessed the incident, Rudd struck Phillips twice in the face before entering Hobgood's office. (Resp't's Mem. Supp. Summ. J. Attach. 3, Incident Report ¶ 25.)

himself, and that self defense should serve as a complete defense to culpability for the fighting charge." (Mem. Supp. § 2241 Pet. 3; *see* Resp't's Mem. Supp. Mot. Summ. J. Attach. 3 Discipline Hr'g Officer Report 1.) "The Disciplinary Hearing Officer refused to recognize or consider Rudd's affirmative defense, stating that it was irrelevant and inapplicable in BOP disciplinary hearings." (Mem. Supp. § 2241 Pet. 3.) "Rudd was convicted of fighting based on his admission he hit Phillips, and was punished by loss of 27 days of Good Conduct Time previously applied, which increased his release date, and by a transfer to a higher security prison." (*Id.*)

## II. Rudd's Ground for Relief

Rudd contends that he is entitled to habeas relief upon the following ground.

> The refusal of the Disciplinary Hearing Officer and other BOP officials to consider my claim of self defense as a complete affirmative defense to a charge of fighting another inmate during a prison disciplinary proceeding, and resulting penalty of disallowance of 27 good time days, violated my right to substantive due process of law, which incorporates the fundamental and natural right of self defense and self preservation . . . .

(§ 2241 Pet. 2.) Rudd suggests that because his preexisting injuries left him acutely vulnerable to sustaining a major injury from a blow to his head, it was particularly necessary for him to use violence to defend himself.[4]

---

[4] In his Memorandum in Support of his § 2241 Petition, Rudd also asserts that Hobgood violated his rights under the Eighth Amendment by failing to protect him from assault by Phillips and thus entitled Rudd to exercise "his fundamental right to self defense." (Mem. Supp. § 2241 Pet. 1) To the extent this argument provides a basis for habeas relief, it is subsumed within Rudd's substantive due process claim. If Rudd wishes to pursue an independent civil rights action for this alleged violation of his Eighth Amendment rights, he is free to do so.

## III. Analysis

The parties do not dispute that Rudd enjoyed a liberty interest in vested good

conduct time. *See Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

Nor does Rudd dispute that, prior to revoking his good conduct time, he received the

procedural due process required by the Constitution.[5] Rudd contends that his conviction

for fighting with another inmate violates his substantive due process right to defend

himself.

The government runs afoul of substantive due process only when its actions shock

the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *Young v.

City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001). The United States Court of

Appeals for the Fourth Circuit has emphasized that the protections of substantive due

process extend only to "state action so arbitrary and irrational, so unjustified by any

circumstance or governmental interest, as to be literally incapable of avoidance by any

pre-deprivation procedural protections or of adequate rectification by any post-

---

[5] Prior to revoking vested good conduct time, the Due Process Clause of the Constitution entitles an inmate to the following process:

> (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011) (citing *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Additionally, the disciplinary decision must be supported by "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

deprivation state remedies." *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986). To shock the conscience, "the conduct must be 'intended to injure in some way *unjustifiable by any government interest.*'" *Hawkins v. Freeman*, 195 F.3d 732, 742 (4th Cir. 1999) (quoting *Lewis*, 523 U.S. at 849). Thus, in the present context, Rudd must demonstrate that, in the context of prison disciplinary hearings, there is no justification for the government to punish him for fighting if he was defending himself. He cannot do so.

Rudd points to the recent decision of *United States v. Gore*, 592 F.3d 489 (4th Cir. 2010), to support his assertion that the right to self-defense survived his incarceration. In *Gore*, the defendant was charged with the federal *criminal* offense of forcibly assaulting a correctional officer and forcibly resisting a correctional officer. *Id.* at 490. The Fourth Circuit considered whether common-law self-defense was available even though the relevant federal criminal statute contained no language providing for any affirmative defense. *Id.* at 491. The Fourth Circuit noted that "any inquiry into whether a common-law defense to a federal criminal statute may be recognized must focus on the particular circumstances and in the end turn on whether it can be said that Congress contemplated the defense when it enacted the statute." *Id.* at 492. In concluding that the affirmative defense of self-defense existed, the Fourth Circuit observed, "Physical contact and force are inherent in maintaining order and providing safety. But this reality cannot deny the need for self-defense in the most serious of circumstances." *Id.* at 493.

*Gore*, however, dealt with a federal criminal prosecution, not a prison disciplinary proceeding. *See Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). The United States Court of Appeals for the Seventh Circuit has observed that it is "misguided" to suggest that a "statute creating a justification defense for defending one's self or another in the criminal context gives [an inmate] a substantive constitutional right" to use violence to defend himself or herself in the context of prison disciplinary proceedings. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Colon v. Schneider*, 899 F.2d 660, 672 (7th Cir. 1990)); *see Hawkins*, 195 F.3d at 748 ("[W]hile liberty interests entitled to procedural due process protection may be created by state law as well as the Constitution itself, those entitled to substantive due process protection (whatever the procedures afforded) are 'created only by the Constitution.'" (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring))).

The Seventh Circuit offers a convincing explanation why, in the context of a prison disciplinary proceeding, there is no constitutional right to use violence to defend oneself:

> [Because] there is virtually no support for such a judicially created constitutional right in the criminal law, we believe that manufacturing such a right for application in non-criminal, prison disciplinary proceedings is even less justified. This is particularly so where prison authorities daily face an intractable problem of violence within the prison walls. A right that threatens to undermine prison discipline by encouraging inmates to combat violence

with more violence subverts a core prison function of ensuring order and safety within the institution.  Without disputing or passing on the primacy of the "right" of self-defense in a criminal law context, we determine that in view of our deference to the administrative discretion of prison authorities, prisoners do not have a fundamental right to self-defense in disciplinary proceedings.

*Rowe v. DeBruyn*, 17 F.3d 1047, 1052–53 (7th Cir. 1994); *see Turner v. Safley*, 482 U.S. 78, 95 (1987) ("[A] prison inmate retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." (second alteration in original; internal quotation marks omitted)). In the context of a prison disciplinary hearing, Rudd did not enjoy a substantive due process right to use violence to defend himself.  *See Jones*, 637 F.3d at 848 (rejecting BOP inmate's defense of self-defense to charge of fighting with another person); *Williams v. Kort*, 223 F. App'x 95,100 (3d Cir. 2007) (agreeing with Seventh Circuit's conclusion that there is no constitutional right to self-defense for inmates); *MacMillan v. Pontesso*, 73 F. App'x 213, 214 n.1 (9th Cir. 2003) (concluding alleged failure to recognize self-defense to institutional charge of fighting with another person "does not necessarily render [the institutional conviction] unconstitutional") (citation omitted); *Saleh v. Davis*, No. 09-cv-02607-PAB-KLM, 2010 WL 5676524, at *6 (D. Colo. Nov. 4, 2010); *Sack v. Canino*, No. CIV A. 95-1412, 1995 WL 498709, at *1 (E.D. Pa. Aug. 21, 1995).  Accordingly, Rudd's claim will be dismissed.

The Motion for Summary Judgment will be granted.  The petition for a writ of

habeas corpus will be denied.  The action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

                                                    /s/
                                    _____
                                    HENRY E. HUDSON
                                    UNITED STATES DISTRICT JUDGE

Date: July 18, 2011
Richmond, Virginia

8